# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER S. EDWARDS<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL S. HUNTER<br><br>Defendant. | CIVIL ACTION NO.:<br><br><br><br>**COMPLAINT**<br>**AND**<br>**JURY DEMAND** |

Plaintiff, Christopher S. Edwards ("Plaintiff"), by and through his attorneys, John Rue & Associates, LLC, for his Complaint against defendant Michael S. Hunter (the "Defendant"), alleges as follows:

## THE PARTIES

1. Plaintiff is a natural person who, on the date hereof, is a resident of the State of New York.

2. Defendant is a natural person who is an attorney and who resides in Charlotte, North Carolina.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 by reason of the fact that this action arises under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 –1692p.).

4. This Court has pendent jurisdiction over any claims asserted herein which arise under state law, including without limitation, Plaintiffs' claims seeking damages for common law

violations, pursuant to 28 U.S.C. §1367 in that such claims flow from a common nucleus of operative facts.

5. This Court has personal jurisdiction over Defendant pursuant to New York's "long-arm" statute, CPLR 302, because this case arises out of wrongful acts by Defendant causing injury to Plaintiff within the State of New York.

6. This Court has personal jurisdiction over Defendant pursuant to New York's "long-arm" statute, CPLR 302, because Defendant regularly does business, and engages in other persistent courses of conduct, within the State of New York, including, without limitation, members of homeowners' associations who are residents of the State of New York.

7. This Court has personal jurisdiction over Defendant pursuant to CPLR 302 because Defendant should reasonably expect his acts to have consequences within the State of New York.

8. Venue is proper in this District because a substantial part of the events that gave rise to the claims asserted herein occurred in this District.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9. Plaintiff brings this action against Defendant in connection with (i) a Settlement Agreement, made and effective as of August 2, 2018 (the "Settlement Agreement"), by and between 400 North Church Condominium Owners Association, Inc. (the "Association") and Plaintiff,[1] and (ii) tortious and other wrongful acts committed by Defendant against Plaintiff.

10. On the date hereof, Plaintiff owns a condominium located in a building governed by the Association.

11. The Association is a client of Defendant.

12. Beginning in the fall of 2017, Plaintiff grew concerned about actions by the

---

[1] A copy of the confidential Settlement Agreement will be provided to the Court for *in camera* review upon request.

Association, while Defendant was engaged as its counsel, that reflected a lack of compliance by the Association with applicable law and the Association's bylaws and other governing documents (collectively, the "Governing Documents").

13. Such actions included, without limitation, holding elections for the Executive Board of the Association (the "Executive Board") at which an incorrect number of members of the Executive Board were elected in violation of the Governing Documents and in connection with which other violations of the Governing Documents occurred. Defendant gave legal advice to the Association in connection with such unlawful elections and attended meetings of the Association, as its counsel, at which such unlawful elections occurred.

14. Plaintiff determined, upon inquiry, that he and other members of the Association had claims against the Association for damages arising from such actions.

15. In April 2018, the property manager of the Association, with the knowledge and approval of the Association, the Executive Board and/or a purported member of the Executive Board and/or a purported officer of the Association, and while the Association was represented by Defendant, knowingly and intentionally posted false statements about Plaintiff and his alleged creditworthiness to a website accessible by all members of the Association.

16. After other members of the Association alerted Plaintiff to such false statements, the property manager of the Association, the Executive Board and/or a purported member of the Executive Board and a purported officer of the Association broadcast a statement to members of the Association, acknowledging the making of such false statements, annexed hereto as <u>Exhibit A</u>.

17. By that point, however, the damage to Plaintiff's reputation had been done.

18. Moreover, such false statements unlawfully and falsely alleged that Plaintiff owed amounts to the Association, although the Association's property manager subsequently

acknowledged that no such amounts were owed.

19. Upon negotiation, Plaintiff and the Association determined to enter into a Settlement Agreement as to all matters arising between them.

20. The Settlement Agreement contains a confidentiality provision and is described herein in only the most general of terms or with reference to subsequent non-confidential communication so as not to violate the confidentiality provision of the Settlement Agreement.

21. Defendant drafted the Settlement Agreement, together with counsel to Plaintiff.

22. Plaintiff and the Association, advised by Defendant, agreed that, following execution of the Settlement Agreement, Plaintiff's Association account (the "Account") balance would be zero.

23. On August 1, 2018, i.e., one day prior to the execution of the Settlement Agreement, the Association, upon the advice of Defendant, imposed a "Special Assessment" in the amount of $3,300.00 on Plaintiff and added such amount to his Account.

24. Plaintiff and Defendant were aware of the Special Assessment at the time they negotiated the Settlement Agreement, and at the time that the parties agreed that, following execution of the Settlement Agreement, Plaintiff's Account balance would be zero.

25. The Association, counseled by Defendant in connection with the Settlement Agreement, did not intend to remove the Special Assessment from the Account, notwithstanding the Association's obligation to do so, as negotiated by Defendant.

26. The Association, counseled by Defendant in connection with the Settlement Agreement, did not inform Plaintiff, prior to execution, of its intention to seek payment of the Special Assessment, despite the Association's agreement, made with counsel by Defendant, to remove the Special Assessment.

27. On August 2, 2018, the Association executed the Settlement Agreement and delivered the Settlement Agreement, through Defendant, to counsel to Plaintiff.

28. On August 2, 2018, Plaintiff executed the Settlement Agreement, and on August 6, 2018, counsel to Plaintiff delivered the Settlement Agreement to Defendant.

29. On August 6, 2018, Defendant confirmed to Plaintiff, through counsel, that Plaintiff's Account balance would be cleared, and Defendant did not contradict Plaintiff's understanding that the Account balance would be cleared to zero, through emails annexed hereto as Exhibit B. However, Defendant knew that, contrary to Defendant's statements, the Association did not intend to remove the Special Assessment from the Account.

30. Upon mutual execution and delivery of the Settlement Agreement, Plaintiff, through counsel, requested that the Association reduce the Account balance to zero, reflecting the release of all charges and all other released obligations, consistent with Defendant's express statements and the Settlement Agreement.

31. On August 7, 2018, the Association reduced the Account balance by $1,311.27, but refused to further reduce the Account balance to zero.

32. On August 9, 2018, contrary to Defendant's prior statements to Plaintiff and the Settlement Agreement, Defendant stated to Plaintiff, "As the account statement sent to you by Mr. Dix showed, all that was left on your account was the August monthly assessment, which you have paid, and the special assessment of $3,300 just approved at the annual meeting. All charges related to the "Railing Repair" have been removed. I trust that you understand that the Settlement Agreement did not absolve you of paying the special assessment."

33. Defendant further unlawfully threatened Plaintiff in August 2018.

34. On August 9, 2018, contrary to confidentiality obligations, Defendant disclosed

5

text of the Settlement Agreement to a third party.

35. August 9, 2018, Plaintiff provided contact information for John Rue & Associates, LLC ("Rue") to Defendant and informed Defendant that Rue was counsel to Plaintiff. Defendant responded to Plaintiff alone, "Mr. Edwards – I am not going to call your attorney because we have nothing to discuss. If you fail to pay the assessment, I have instructed the board to handle it like any other unpaid assessment. If you so desire, you can make your arguments to the hearing officer at a foreclosure hearing. I trust your New York counsel is licensed to practice in North Carolina." Defendant did not have the consent of Rue to such communication and was not authorized to make such communication by law or court order.

36. On August 10, 2018, the Association reduced the Account balance by an additional $493, leaving a balance of $3,300, equal to the Special Assessment.

37. Subsequently, Defendant filed an amendment to the Governing Documents (the "Amendment"), which Defendant had prepared upon request by the Association, to, among other matters, correct the number of members of the Executive Board to be elected each year; however, the Amendment amended the terms of service of the "Board of Directors", which does not exist. Further, the Amendment, by its terms, prohibits any member of the Executive Board from serving if such person has "violations", even though Defendant knew that members of the Executive Board had been accused of violating the Governing Documents and legal duties to members of the Association.

38. Defendant has also taken legal advice that he gave to the Association and disclosed such legal advice to third parties.

39. Plaintiff subsequently commenced litigation against the Association.

40. Plaintiff has complied with all terms and conditions of the Settlement Agreement.

41. Notwithstanding anything to the contrary in this Complaint, as a courtesy to Defendant, Plaintiff raises no claims whatsoever with respect to periods prior to August 6, 2018.

**FIRST CAUSE OF ACTION**
**(Violations of Fair Debt Collection Practices Act)**

42. Plaintiff incorporates paragraphs 1 through 41 as if fully set forth herein.

43. The Fair Debt Collection Practices Act, Pub. L. 95-109; 91 Stat. 874, codified as 15 U.S.C. § 1692 –1692p (the "Federal Act"), establishes, among other matters, legal protection from abusive debt collection practices.

44. Defendant, as a lawyer acting on behalf of a homeowners' association in attempts to collect alleged debts, particularly from Defendant, who resides in a state other than North Carolina, is subject to the restrictions of the Federal Act.

45. Section 805 of the Federal Act requires that "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt…if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer..."

46. Defendant had received Plaintiff's attorney's name and address prior to directly threatening Plaintiff on August 9, 2018, in violation of the Federal Act.

47. Section 805 of the Federal Act also requires that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not

7

communicate further with the consumer with respect to such debt, except -- (1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy."

48. After Plaintiff notified Defendant in August 2018 that Plaintiff did not owe the Special Assessment, Defendant repeatedly threatened Plaintiff, in violation of the Federal Act.

49. Section 807 of the Federal Act provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:… The false representation of --… the character, amount, or legal status of any debt."

50. As the Association had agreed to waive the Special Assessment, Defendant's threats against Plaintiff constituted a violation of the Federal Act.

51. On August 9, 2018, Defendant stated: "If you so desire, you can make your arguments to the hearing officer at a foreclosure hearing."

52. Section 807 of the Federal Act also prohibits "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." Further, Section 807 of the Federal Act prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

53. The Association did not intend to foreclose on Plaintiff's property.

54. Further, Defendant was not authorized to commence a foreclosure action against Plaintiff.

55. Defendant's threats against Plaintiff constituted a violation of the Federal Act.

56. Section 807 of the Federal Act also prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

57. Defendant's false statements to Plaintiff regarding the Settlement Agreement and the status of the Special Assessment constituted a violation of the Federal Act.

58. Section 807 of the Federal Act also prohibits "[t]he failure to disclose in the initial written communication with the consumer…that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector."

59. Defendant failed to provide disclosures required by the Federal Act, and, therefore, Defendant's communications to Plaintiff violated the Federal Act.

60. Plaintiff has been injured by Defendant's repeated violations of the Federal Act, and Plaintiff is entitled to recover damages from Defendant in an amount to be determined at trial in connection with such injury.

### SECOND CAUSE OF ACTION
### (Violation of North Carolina Fair Debt Collection Acts)

61. Plaintiff incorporates paragraphs 1 through 60 as if fully set forth herein.

62. North Carolina General Statutes § 58-70-1, *et seq.*, and § 75-50, *et seq.* (collectively, the "North Carolina Act") also establish, among other matters, legal protections from abusive debt collection practices.

63. Section 58-70-95 of the North Carolina Act prohibits "[r]epresenting that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law."

64. On August 9, 2017, Defendant stated: "If you so desire, you can make your arguments to the hearing officer at a foreclosure hearing."

65. The Association did not intend to foreclose on Plaintiff's property.

66. Defendant was not authorized to commence a foreclosure action against Plaintiff.

67. Defendant's threats against Plaintiff constituted a violation of the North Carolina Act.

68. Section 58-70-110 of the North Carolina Act prohibits "[f]ailing to disclose in the initial written communication with the consumer…that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector…" Further Section 75-54 of the North Carolina Act prohibits "[f]ailing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt..."

69. Defendant failed to provide the disclosures required by the North Carolina Act, and, therefore, Defendant's communications to Plaintiff violated the North Carolina Act.

70. Section 75-55 of the North Carolina Act prohibits "[c]ommunicating with a consumer (other than a statement of account used in the normal course of business) whenever the debt collector has been notified by the consumer's attorney that he represents said consumer."

71. Defendant had received Plaintiff's attorney's name and address prior to directly threatening Plaintiff on August 9, 2018, in violation of the North Carolina Act.

72. Plaintiff has been injured by Defendant's violations of the North Carolina Act, and Plaintiff is entitled to recover damages from Defendant in an amount to be determined at trial in connection with such injury.

### THIRD CAUSE OF ACTION
**(Violation of New York Debt Collection Acts)**

73. Plaintiff incorporates paragraphs 1 through 72 as if fully set forth herein.

74. Section 601 of the New York General Business Law also prohibits "[t]hreatening any action which the principal creditor in the usual course of his business does not in fact take" and "[claim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist."

75. On August 9, 2018, Defendant stated: "If you so desire, you can make your arguments to the hearing officer at a foreclosure hearing."

76. The Association did not intend to foreclose on Plaintiff's property.

77. Defendant was not authorized to commence a foreclosure action.

78. Defendant's threats against Plaintiff constituted a violation of Section 601 of the New York General Business Law.

79. Plaintiff has been injured by Defendant's violations of the New York General Business Law, and Plaintiff is entitled to recover amounts in connection with such injury from Defendant.

### FOURTH CAUSE OF ACTION
**(Fraud)**

80. Plaintiff incorporates paragraphs 1 through 81 as if fully set forth herein.

81. As set forth above, in the course of Defendant's performance of legal services for the Association, Defendant knowingly made false representations of material fact to Plaintiff in

11

connection with the Settlement Agreement, in order to induce Plaintiff to execute the Settlement Agreement.

82. Plaintiff did not know that Defendant's representations of material fact were false.

83. Plaintiff relied on Defendant's false representations, as Defendant acted on behalf of the Association in connection with the Settlement Agreement.

84. Defendant deceived Plaintiff by Defendant's false statements and material omissions.

85. Plaintiff was injured by his reliance, as he complied with the Settlement Agreement and thus refrained from exercising otherwise legal rights, but Plaintiff did not receive the benefits promised to him in connection with the Settlement Agreement.

86. Defendant's conduct constitutes fraud and has injured Plaintiff.

87. Plaintiff is entitled to recover damages from Defendant in an amount to be determined at trial in connection with such injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Damages for Defendant's violation of the Federal Act, the North Carolina Act and the New York General Business Laws, in the maximum amounts permitted thereunder;

B. The amount of attorneys' fees reasonably incurred by Plaintiff in connection with Defendant's violations of Federal Act, the North Carolina Act and the New York General Business Law;

C. The costs of this action;

D. Damages incurred by Plaintiff in connection with Defendant's fraud;

E. An injunction restraining Defendant from performing future legal services for the Association;

F. Such other sanctions against Defendant as the Court deems appropriate; and

G. Such other and/or different relief as this Court may deem appropriate, just and proper.

Dated: August 8, 2019                    JOHN RUE & ASSOCIATES, LLC

By: *John Rue*

John Rue
37 Main Street
Sparta, NJ 07871
862-283-3155
john@johnruelaw.com

*Attorneys for Plaintiff*
*Christopher S. Edwards*

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all triable issues.

Dated: August 8, 2019                                JOHN RUE & ASSOCIATES, LLC

By: *John Rue*

John Rue
37 Main Street
Sparta, NJ 07871862-283-3155
john@johnruelaw.com

*Attorneys for Plaintiff*
*Christopher S. Edwards*

Exhibit A

**De :** CAMS <email@camsmgt.com>
**Envoyé :** lundi 16 avril 2018 14:51
**À :** csedwards72@hotmail.com
**Objet :** Message from 400 North Church Condominium OA, Inc. - Correction to February 2018 Board Minutes - [#XN2945845]

The February board minutes contain an incorrect statement about an owner allegedly failing to appear for a hearing regarding a fine. The fine had been improperly imposed and had been withdrawn by CAMS several weeks prior to the date of the hearing, so no hearing should have occurred, and no fine was or is due. We apologize to the owner for the false statement about the owner, and we regret the error. The minutes have been corrected.

400 North Church Condominium OA, Inc.

This Community is Professionally Managed By:
CAMS
(704) 731-5560 | (877) 672-2267 | www.camsmgt.com

Exhibit B

**From:** Hunter, Mike <MHunter@horacktalley.com>
**Sent:** Monday, August 06, 2018 5:05 PM
**To:** Christopher Hicks <chris@hickslawpllc.com>
**Subject:** Re: EDWARDS and 400 North Church COA

Thanks, I have forwarded to my client and asked them to let me know when the account has been cleared and to send me a copy of the communique to owners.

Michael S. Hunter
Attorney at Law
Horack Talley Pharr & Lowndes, PA
(704)-716-0817 direct
www.horacktalley.com

Blog:   www.CarolinaCommonElements.com

**From:** Christopher Hicks <chris@hickslawpllc.com>
**Date:** Monday, August 6, 2018 at 3:12 PM
**To:** email <MHunter@horacktalley.com>
**Cc:** Christopher Hicks <chris@hickslawpllc.com>
**Subject:** EDWARDS and 400 North Church COA

Mike,

In an effort to be accommodating and move things along, Chris has authorized me to deliver the fully executed agreement.  It is attached.

Please confirm receipt and give me a timeframe when you think the Association will clear his account to 0 and publish the joint statement.

I look forward to hearing from you.

Thanks.

Very truly yours,

Christopher A. Hicks
Hicks Law PLLC
2300 E. 7th St., Suite 100
Charlotte, North Carolina 28204
704-333-7800 ext. 127
chris@hickslawpllc.com
www.hickslawpllc.com